## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MICHAEL J. COLLOPY,

           Plaintiff,

vs.

CITY OF HOBBS, a New Mexico
Municipal Corporation, and
TONY KNOTT, in his individual
and official capacities,

           Defendants.

No. CIV 00-_____

JURY TRIAL DEMANDED

### COMPLAINT FOR CIVIL RIGHTS VIOLATIONS

Plaintiff Michael J. Collopy, by undersigned counsel, Philip B. Davis, Attorney at Law,
and Vanzi & Gagne, P.C., and for his claims against the Defendants, states:

1.      This is an action for damages brought pursuant to 42 U.S.C. §§ 1981 and 1983 for
violations of Plaintiff's free speech and association rights under the First and Fourteenth
Amendments to the United States Constitution and for violation of Plaintiff's right to be free from
discrimination on the basis of race under the Fourteenth Amendment.

2.      Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343.

3.      This Court has personal jurisdiction of the parties.

4.      Venue is proper in this district.

5.      Plaintiff is a citizen of the United States and a resident of the City of Hobbs, New
Mexico. At all times material hereto, Plaintiff was an attorney licensed to practice in the State of
New Mexico and served part-time as a Special Master to the Lea County Children's Court, a
position he had held prior to the time relevant to this action for more than 16 years.

6.     Defendant City of Hobbs is a municipal corporation duly authorized under the laws of the State of New Mexico.  Defendant Tony Knott is, and was at all times material, the Chief of Police of the City of Hobbs.  As its Chief of Police, defendant Knott was the final policymaker for the City of Hobbs with regard to the provision of police records to other law enforcement authorities and other law enforcement related activities.  At all times material, Defendant Knott acted under color of law and within the course and scope of his employment.

7.     In October 1996 an incident occurred at a Hobbs High School football game, which led to the arrest of several members of the local Black community and in turn resulted in an uproar in the minority community of Hobbs regarding the actions of the Hobbs Police Department.

8.     Among the juveniles arrested was Michael Hodge, who was charged with resisting arrest, eluding, or obstructing an officer.

9.     Hodge was the son of Verna Hodge and the nephew of Carl Mackey, Verna Hodge's brother, both of whom were, and had been for more than a year, outspoken community leaders and activists in the Black and Hispanic community in Hobbs protesting the conduct of the Hobbs Police Department.

10.     Shortly after his arrest, Hodge filed a tort claim notice alleging his civil rights had been violated by the Hobbs Police Department.

11.     There was significant media interest in the case and an investigation into the alleged civil rights violations of Hodge and the others arrested was begun by the United States Department of Justice and the Federal Bureau of Investigation.

12.     On February 14, 1997, Hodge's case was randomly assigned to plaintiff in his capacity as Special Master to the Lea County Children's Court.

2

13.     Although provision exists in the New Mexico Children's Code for a party to do so,
for good cause shown, no objection was made to plaintiff's appointment to the Hodge case prior
to the hearing on the merits held in the matter in June 1997.

14.     In the more than 16 years that plaintiff had served as a Special Master, his ability
to be fair and impartial had never once been questioned, including in cases where the credibility of
Hobbs police officers was an issue.

15.     At the conclusion of the evidentiary hearing on the merits of the Hodge case,
plaintiff found that the State had not met its burden of proving the crime alleged against Hodge
beyond a reasonable doubt and announced he would recommend to the Children's Court that the
charges be dismissed.

16.     Plaintiff further noted in his decision, in response to an argument by Hodge's
attorney, that although Hodge's civil rights "may well have been violated ..., that is not for this
court to determine."

17.     This latter comment was related to defendant Knott by a local news reporter who
had attended the hearing.

18.     Defendant Knott became concerned, angry and upset at the comment attributed to
the plaintiff, fearing it would be utilized by the minority community, including Ms. Hodge and Mr.
Mackey, who had complained previously of defendants' conduct.

19.     Defendant Knott contacted the Office of the District Attorney, which had
prosecuted the Hodge case, to complain that the Hobbs police officers involved in the Hodge case
"did not get a fair shake" at the hearing.

20.     Defendant Knott urged, encouraged and instigated the District Attorney's Office

3

to find a way to obtain a new hearing or other judicial relief that would set aside the plaintiff's findings in the Hodge case, despite that no legal grounds for such relief existed.

21.    After the hearing in the Hodge case, but before he was contacted by defendant Knott, the assistant district attorney who had prosecuted the case, William Quickel, had told Hodge's criminal defense attorney that he did not intend to appeal plaintiff's decision to recommend dismissal of the charges.

22.    After being contacted by defendant Knott, however, Quickel, acting at the instigation and urging of defendant Knott, indeed filed an "Exception" to the Special Master's Report.

23.    The "Exception" filed in the record by the District Attorney's Office presented no legal issues for review but instead was an improper attack on the impartiality of the plaintiff and an attempt to discredit him by misquoting, or taking out of context, his remarks about a possible civil rights violation.

24.    The "Exception" focused on the contacts between the Hobbs Police Department and one of the plaintiff's children purportedly evidenced in numerous "police blotter" records which were attached to it.

25.    The name of any person involved in an incident recorded by the Hobbs police department, whether as a suspect, victim, witness or otherwise, is subject to listing in the "police blotter" record relating to that incident.

26.    The names of various family members of the plaintiff, including plaintiff himself, had appeared in Hobbs police blotter records over a period of 14 years.

27.    The initial set of records that defendant Knott provided to the District Attorney's

4

Office related to plaintiff's child when he was a juvenile.

28.     Defendant Knott provided to the District Attorney's Office juvenile records relating to plaintiff's child for use in supporting the "Exception" filed in the public record, despite that the privacy of those records is protected by state law.

29.     Defendant Knott's dissemination of those records for inclusion in a document he knew would be filed in the public record was a violation of the right to privacy guaranteed by such state law.

30.     Within days of its filing, the "Exception" filed by the District Attorney's Office was overruled by the district court and plaintiff's decision in the Hodge case was affirmed.

31.     Shortly thereafter, the Honorable Patrick J. Francoeur, Chief Judge of the Fifth Judicial District, referred the matter to Virginia Ferrara, Chief Bar Counsel for the Disciplinary Board of the New Mexico Supreme Court, for disciplinary proceedings against the assistant district attorney, Mr. Quickel, and his boss, District Attorney Tom Rutledge, for their legal misconduct based on the "Exception" they had filed in the Hodge case. Chief Judge Francoeur further indicated that a majority of the judges in the Fifth Judicial District viewed such conduct to be an attempt to intimidate the judges and/or the Special Master in future decision making.

32.     Defendant Knott subsequently learned that plaintiff was going to testify at a hearing in January 1998 before the Disciplinary Board with regard to disciplinary charges which had been preferred against Quickel and Rutledge.

33.     In a further effort to discredit plaintiff, defendant Knott funneled additional police records, this time relating to plaintiff as well as to his children, to Quickel and Rutledge, not for official business purposes but for their personal use in defending against the disciplinary charges

5

brought based on their legal misconduct.

34.    The vast majority of the police records defendant Knott produced to Quickel and Rutledge identified plaintiff and his children as either victims of or witnesses to alleged crimes.

35.    Despite that the vast majority of these contacts identified plaintiff and his children as victims or witnesses, defendant Knott nevertheless proceeded as though these numerous contacts were negative and that plaintiff was prejudiced against the Hobbs Police Department and/or biased with regard to the testimony of Hobbs police officers and that it was this suspected bias that had led to plaintiff's decision to acquit Michael Hodge and also to plaintiff's statement at the hearing regarding the possible violation of Hodge's civil rights.

36.    In both instances in which defendant Knott provided Quickel and Rutledge with the police blotter records listing the names of plaintiff and/or plaintiff's family members, he did so in an improper attempt to harass, intimidate and retaliate against the plaintiff for his having engaged in protected first amendment conduct.

37.    The Disciplinary Board of the New Mexico Supreme Court imposed a formal reprimand on attorneys Quickel and Rutledge as a result of the disciplinary proceedings against them.  The Board found that defendant Knott became annoyed at the comment attributed to the plaintiff regarding the possible violation of Michael Hodge's civil rights, that htere was no legal basis for the "Exception" that was filed in the Hodge case and that Quickel and Rutledge had acted improperly by filing the "Exception" at the urging of defendant Knott.

38.    Defendant Knott's actions were undertaken with the intent to create a chilling effect upon plaintiff and to compromise or inhibit his ability to engage in decision-making free of undue influence.

6

39.    Defendant Knott's actions were also undertaken in retaliation for his content-based disapproval of plaintiff's decision and ruling in the Hodge case, which ruling involved a matter of public concern, and/or in retaliation for plaintiff's statement that Michael Hodge's civil rights may have been violated, both of which were actions undertaken by plaintiff protected by the first amendment.

40.    Defendant Knott's actions, to the extent they involved the dissemination of records containing the names of plaintiff's children, were also undertaken with the intent to interfere with plaintiff's right to familial association

41.    Defendant Knott's actions were also undertaken with the intent to place plaintiff in a false light and to make it appear that he was not acting as an impartial decision-maker but instead was corrupt.

42.    Defendant Knott's actions were also undertaken because plaintiff's ruling in the Hodge case favored a Black citizen, who was the son and nephew of Black community activists openly opposing racial discrimination by the defendants, and came at a time when the Hobbs Police Department was under investigation based on allegations of racial discrimination arising from the very incident that also resulted in the criminal prosecution of Michael Hodge.

43.    Defendant Knott saw plaintiff's ruling as an instance of plaintiff coming to the aid or assistance of a Black citizen and acted in an attempt to forestall further acts helpful to the Black community by the plaintiff and others, in violation of plaintiff's right to be free from racial discrimination.

44.    Plaintiff had a constitutionally protected liberty interest in the position of Special Master.

7

45.     As a direct result of defendant Knott's actions, and in particular as a result of defendant Knott's utilization of records relating not only to plaintiff but to his children, plaintiff was sufficiently chilled in his willingness and ability to serve as a Special Master, that he resigned that position.

46.     Defendant City of Hobbs is directly liable for the wrongful actions of its final policymaker, defendant Knott, as described above.

47.     As a direct and proximate result of the defendants' wrongful acts, Plaintiff incurred injuries in addition to his being forced to resign from the Special Master's position, including lost income, emotional distress, humiliation and embarrassment, damage to his professional career, and violations of his constitutional rights, including but not limited to his rights to freedom of speech and to familial association and his protected liberty interest in the position of Special Master.

48.     In violating plaintiffs' rights, defendants acted intentionally, willfully, recklessly, maliciously and with deliberate indifference toward plaintiff's clearly established constitutional right to be secure from harassment and retaliation for the exercise of his federally protected first amendment rights.

49.     Defendants did not act in good faith and are not entitled to qualified immunity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Michael J. Collopy prays for judgment as follows:

1.     Compensatory damages against the defendants, and each of them, jointly and severally.

2.     Punitive damages against defendant Knott.

8

3.     Pre-judgment and post-judgment interest.

4.     Trial by jury on all issues so triable.

5.     Reasonable attorney fees and costs.

6.     Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Philip B. Davis
814 Marquette, NW
Albuquerque, NM 87102
(505) 242-1904

VANZI & GAGNE, P.C.
Linda M. Vanzi
Jane Gagne
108 Wellesley Dr. SE
Albuquerque, NM 87106
(505) 262-2039

Attorneys for Plaintiff

9