IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL J. COLLOPY,

    Plaintiff,

vs.

CITY OF HOBBS, a New Mexico Municipal Corporation, and TONY KNOTT, in his individual and official capacities,

    Defendants.

No. CIV 00-0807 PK/LFG

MEMORANDUM OPINION AND ORDER

THIS MATTER comes on for consideration of Defendants City of Hobbs and Tony Knott's Motion to Dismiss All Claims in Plaintiff's Complaint filed September 21, 2000 (doc. 16), and the court, being advised fully in the premises, finds that the motion is well taken and should be granted.

Background

Mr. Collopy alleges the following facts, which the court takes as true in determining the legal sufficiency of the complaint under Fed. R. Civ. P. 12(b)(6). See Sutton v. United Airlines, Inc., 527 U.S. 471, 475 (1999). Mr. Collopy is an attorney and was a special master to the Lea County Children's Court. Mr. Collopy was assigned a criminal action

brought by the State against Michael Hodge, an African-American juvenile, charging him with "resisting arrest, eluding, or obstructing an officer" at a Hobbs High School football game.  Compl. at ¶ 8 (doc. 1).  After his arrest, Mr. Hodge filed a tort claim notice alleging his civil rights had been violated by the Hobbs Police Department in connection with his arrest.  Mr. Hodge's mother, Verna Hodge, and his uncle, Carl Mackey, have openly opposed the Hobbs Police Department's conduct toward minorities.  Id. at ¶ 9.

At Mr. Hodge's hearing, Special Master Collopy concluded he would recommend that the charges against Mr. Hodge be dismissed.  In dialogue with Mr. Hodge's attorney, Special Master Collopy stated that while Mr. Hodge's civil rights "may well have been violated . . . , that is not for this court to determine."  Id. at ¶ 16.

A reporter at the hearing conveyed the special master's statement to Tony Knott, the City of Hobbs Chief of Police.  Id. at ¶ 17.  Special Master Collopy's comment "concerned, anger[ed] and upset" Chief Knott because he feared the comment would "be utilized by the minority community, including Ms. Hodge and Mr. Mackey."  Id. at ¶ 18.  Believing his officers to have been treated unfairly in the hearing, Chief Knott approached William Quickel, assistant district attorney, and requested that Mr. Quickel file an exception to Special Master Collopy's recommendation.  Id. at ¶¶ 19, 20.  Mr. Quickel filed the exception.

The exception was premised upon Special Master Collopy's alleged bias toward the police department.  Id. at ¶ 23.  To support this claim, Chief Knott provided the district attorney's office with police blotters involving one of Mr. Collopy's children (at that time a

2

juvenile).  Id. at ¶¶ 27, 28.  The name of any person involved in an incident, whether as a suspect, victim, witness or otherwise, is subject to listing in the police blotter record.  Id. at ¶ 25.  Mr. Quickel included the blotters in the exception.  Id. at ¶ 24.

The state district court overruled Mr. Quickel's exception and adopted Mr. Collopy's recommendation of dismissal.  Id. at ¶ 30.  A majority of the Fifth Judicial District judges viewed Mr. Quickel's exception as an attempt to influence judges' future decision making.  Id. at ¶ 31.  The matter was referred to the Chief Bar Counsel for the Disciplinary Board of the New Mexico Supreme Court for proceedings against Mr. Quickel and Tom Rutledge, the district attorney.  Id.

To assist Mr. Quickel and Mr. Rutledge in the disciplinary charges, Chief Knott provided additional police blotters relating to Mr. Collopy and his children, the majority of which involved Mr. Collopy's children as victims or witnesses.  Id. at ¶¶ 33, 34.  Chief Knott provided these records to discredit Mr. Collopy.  Id. at ¶ 33.  Chief Knott attributed the dismissal of charges against Mr. Hodge and Mr. Collopy's comment about a potential civil rights claim to Mr. Collopy's bias.  Id. at ¶ 35.

Upon conclusion of the disciplinary proceedings, the Disciplinary Board imposed a formal reprimand against Mr. Quickel and Mr. Rutledge.  See In re Rutledge & Quickel, Disciplinary Nos. 09-97-333 & 09-97-334, 38 N.M. State Bar. Bull. No. 10 at 1, 3-4 (N.M. S. Ct. Disciplinary Bd. Mar. 11, 1999).  The Disciplinary Board concluded that the exception filed at Chief Knott's request had "no sound basis in law" and was frivolous.  Id. at 3.

Mr. Collopy thereafter brought this action against Chief Knott and the City of Hobbs. Mr. Collopy's action is for "damages brought pursuant to 42 U.S.C. § § 1981 and 1983 for violations of [his] free speech and association rights under the First and Fourteenth Amendments . . . and for violation of [his] right to be free from discrimination on the basis of race under the Fourteenth Amendment." Compl. at ¶ 1 (doc. 1). He alleges (1) that he was forced to resign his position as special master; (2) that he lost income; (3) that he suffered emotional distress, humiliation, and damage to his professional career, and (4) that his constitutional rights to freedom of speech, familial association, and his liberty interest in his position as special master were infringed.[1] Id. at ¶ 47.

## Discussion

A.   Freedom of Speech

Mr. Collopy alleges that Chief Knott provided the police blotters (1) "in an improper attempt to harass, intimidate and retaliate against the plaintiff for his having engaged in protected first amendment conduct," Compl. at ¶ 36 (doc. 1), (2) "to create a chilling effect upon plaintiff and to compromise or inhibit his ability to engage in decision-

---

[1] Mr. Collopy asserts that he had a "constitutionally protected liberty interest in the position of Special Master," Compl. at ¶ 44 (doc. 1), which, when read in conjunction with the above language, can be argued to assert a substantive due process claim. This would not be a reasonable reading of the complaint. The complaint is devoid of any additional allegations regarding Mr. Collopy's substantive due process rights. Accordingly, the court construes the reference to Mr. Collopy's liberty interest in his position as part of Mr. Collopy's freedom of speech claim. Mr. Collopy's reference to his resignation is therefore construed as asserting a consequence of Chief Knott's alleged retaliatory actions.

making free of undue influence," id. at ¶ 38, (3) to retaliate against Mr. Collopy for his ruling and statement regarding Mr. Hodge's civil action, id. at ¶ 39, and (4) "to place plaintiff in a false light and to make it appear that he was not acting as an impartial decision-maker but instead was corrupt." Id. at ¶ 41.  Mr. Collopy alleges that Chief Knott's actions "sufficiently chilled [Mr. Collopy] in his willingness and ability to serve as a Special Master, that he resigned that position." Id. at ¶ 45.

"[A]ny form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom." Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000) (quoting Lackey v. County of Bernalillo, No. 97-2265, 1999 WL 2461, at *3 (10th Cir. Jan. 5, 1999) (unpublished)).  To survive a motion to dismiss, the plaintiff must allege, "(1) that [he] was engaged in constitutionally protected activity; (2) that the defendant's [retaliatory] actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." Id. (quoting Lackey, 1999 WL 2461, at *3) (internal quotations omitted).

Therefore, even assuming that Mr. Collopy's speech is constitutionally protected, Chief Knott's actions must have chilled a special master of "ordinary firmness" from continuing on as special master.  The Sixth Circuit has explained that this requirement

>   attempt[s] to balance the tension between two propositions:  First, the injury suffered need not be great because there is no justification for harassing people for exercise of their constitutional rights; but second, a constitutional tort–like any tort–requires injury, and allowing constitutional redress for every minor harassment may serve to trivialize the First Amendment.

Mattox v. City of Forest Park, 183 F.3d 515, 521 (6th Cir. 1999).[2]  Embarrassment, humiliation, and emotional distress may be actionable in some instances.  Id.

Case law provides examples.  A police officer's disclosure of intimate and humiliating details about a rape, some of which the victim had not even disclosed to her spouse, in retaliation for the victim's criticism of the officer's investigation was actionable.  Id. (citing Bloch v. Ribar, 156 F.3d 673, 679-80 (6th Cir. 1998)).  In another action, a judge's statement to the press falsely accusing a disgruntled litigant of stalking her in retaliation for the disgruntled litigant's criticism of the judge was actionable.  Id. (citing Barrett v. Harrington, 130 F.3d 246, 263 (6th Cir. 1997)).  By way of contrast, police officers' criticism of a city council member for her involvement in and expressed opinion regarding an investigation into the fire department was not actionable.  Id. at 522.  Although the criticism factored into the council member's failure to obtain re-election, the court held that the officers' deliberate attempt to discredit the council member was "not equivalent to being fired by a government employer for expressing protected views."  Id.

---

[2] The Tenth Circuit adopted the Sixth Circuit's general approach to freedom of speech claims.  See Worrell, 219 F.3d at 1212 (quoting Lackey, 1999 WL 2461, at *3 (citing Bloch v. Ribar, 156 F.3d 673, 678 (6th Cir. 1998))).  The court therefore thinks it appropriate to analyze Mr. Collopy's claim against applicable Sixth Circuit precedent in this area.

The court concluded: "Public officials may need to have thicker skin than the ordinary citizen when it comes to attacks on their views." Id.

Mr. Collopy's freedom of speech claim must be analyzed in connection with his capacity as a special master.  Notwithstanding that the Disciplinary Board apparently determined that the information provided by Chief Knott provided no basis for an exception, the fact remains that a procedural mechanism exists to challenge a special master's report, see N.M. R. Ann. § 10-111(E), and the recommendations of a special master are contingent upon approval of the children's court judge. Id. § 10-111(C).  In our adversarial system, parties and non-parties frequently comment upon judicial or quasi-judicial rulings.  Objections are sometimes and sometimes not well taken.  Sometimes objections are determined to be frivolous.  But to suggest that Chief Knott was not entitled to communicate his views to the district attorney's office about Mr. Collopy's report (and provide information to support those views) tramples upon the First Amendment.

Chief Knott's actions would not "chill a person of ordinary firmness," Worrell, 219 F.3d at 1212 (emphasis added), from continuing as a special master, particularly given that a special master must be an attorney, N.M. R. Ann. § 10-111(B), and the inherent nature of our adjudicatory system.  Chief Knott did nothing more than provide Mr. Quickel with police blotters.  It was Mr. Quickel who decided to attach the blotters to the exception. Moreover, as explained infra, police blotters are public information, often published in a local newspaper.  The court cannot hold that providing public information to a prosecutor constitutes a chilling of a special master's First Amendment rights.

Chief Knott's conduct amounted to a legally meritless attack on Mr. Collopy's partiality. Chief Knott did not, and could not, deny Mr. Collopy his right to continue as a special master. Cf. Lucas v. Monroe County, 203 F.3d 964, 974 (6th Cir. 2000) (plaintiffs removed from county stand-by tow call list in retaliation for plaintiffs' public remarks regarding sheriff's administration of tow call list); Friedl v. City of New York, 210 F.3d 79, 87 (2d Cir. 2000) (prisoner's work release privileges revoked after applying for and appealing the denial of public assistance, food stamps, and Medicaid). Nor did Chief Knott exercise his authority as police chief to arrest, harass, or otherwise intimidate Mr. Collopy. Cf. Duran v. City of Douglas, Arizona, 904 F.2d 1372 (9th Cir. 1990) (plaintiff stopped and arrested after cursing and making obscene gestures at police officer); Gerakaris v. Champagne, 913 F. Supp. 646, 651 (D. Mass. 1996) (plaintiff's allegations of illegal arrest, abuse, harassment, and inhumane treatment in prison, and false accusations of arson and violating bail conditions in attempt to prevent plaintiff from testifying against former mayor and U.S. Congressman before grand jury stated § 1983 freedom of speech claim).

Chief Knott did not reveal private and intimate details about Mr. Collopy, cf. Bloch, 156 F.3d at 673, or falsely accuse Mr. Collopy of something as embarrassing and humiliating as stalking. Cf. Mattox, 183 F.3d at 522 (citing Barrett, 130 F.3d 246). Mr. Collopy's case is therefore distinguishable from the cases upon which he relies. Cf. Duran, 904 F.2d at 1372; Gerakaris, 913 F. Supp. at 651; Harrison v. Coffman, 35 F. Supp. 2d 722, 725-27 (E.D. Ark. 1999).

The final case upon which Mr. Collopy relies, Guffey v. Wyatt, 18 F.3d 869 (10th Cir. 1994), is also inapposite. Guffey involved a § 1983 action for arrest without probable cause, not retaliation against protected speech. The plaintiff's speech was only relevant in ascertaining whether the defendant-police officer was entitled to qualified immunity for the arrest. See id. at 872.

In sum, construing all factual allegations and reasonable inferences in Mr. Collopy's favor, it cannot be said that the mere provision of public records to a district attorney would chill a special master of ordinary firmness from continuing in that capacity, let alone from engaging in decision making free of undue influence. Even if Chief Knott's conduct resulted in a legally baseless attack, or even a frivolous one, Mr. Collopy should have had "thicker skin." Mattox, 183 F.3d at 522. From a policy perspective, it is clear that permitting Mr. Collopy's claim would have the reverse, and undesirable, effect of chilling governmental agencies' ability and willingness to challenge a special master's impartiality when warranted.

B.      Familial Association

Mr. Collopy asserts that Chief Knott intended to interfere with Mr. Collopy's right to familial association by disseminating the police blotters. Compl. at ¶ 40 (doc. 1) ("Defendant Knott's actions, to the extent they involved the dissemination of records containing the names of plaintiff's children, were also undertaken with the intent to interfere with plaintiff's right to familial association."). A familial association claim is premised upon an "unwarranted intrusion by the state." Trujillo v. Bd. of County

Comm'rs, 768 F.2d 1186, 1190 (10th Cir. 1985) ("[B]oth [freedom of expressive association and intimate association] protect interpersonal relationships from unwarranted intrusion by the state."). "Not every statement or act that results in an interference with the rights of intimate association is actionable." Griffin v. Strong, 983 F.2d 1544, 1548 (10th Cir. 1993) (emphasis added). To state a claim, the plaintiff must allege that the defendant "direct[ed] his or her statements or conduct at the intimate relationship with knowledge that the statements or conduct [would] adversely affect that relationship," id. at 1548, and that the defendant intended to deprive the plaintiff of his right to familial association. Id. at 1546.

Mr. Collopy's complaint does not adequately allege that familial relationships were in fact harmed, an essential element. The allegation in the complaint that Chief Knott attempted to portray Mr. Collopy in a false light says nothing about familial relationships. Compl. ¶ 41 (doc. 1); see also Plaintiff's Response to Defendants' Motion to Dismiss at 11, filed September 21, 2000 (doc. 18). Mr. Collopy also fails to allege that Chief Knott directed his actions at and knew his actions would adversely affect Mr. Collopy's family relationships. The general allegation of intent to interfere with Mr. Collopy's right to familial associations provides no facts from which the necessary inferences might be made.

In his response, Mr. Collopy relies upon the Disciplinary Board's statement that "[t]here was ample evidence in the record that [the actions of Mr. Rutledge and Mr. Quickel] caused an adverse impact upon Mr. Collopy and his family." 38 N.M. State Bar.

Bull. at 4.  There are three reasons why this statement will not suffice.  First, "[i]t is well-established . . . that in determining whether to grant a motion to dismiss, the district court . . . [is] limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint."  Jojola v. Chavez, 55 F.3d 488, 494 (10th Cir. 1995); accord Friedl, 210 F.3d at 83.  Second, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984).  Third, the statement says nothing about the supporting facts and circumstances, even assuming that the actions of Mr. Rutledge and Mr. Quickel are attributable to Chief Knott.

C.   Privacy

Finally, Mr. Collopy alleges that the police blotters are protected by state privacy law and that Chief Knott's "dissemination of those records for inclusion in a document he knew would be filed in the public record was a violation of the right to privacy guaranteed by such state law."  Complaint at ¶ ¶ 28-29 (doc. 1).

To sustain his claim, Mr. Collopy must have a legitimate expectation of privacy in the information disclosed.  See Falvo v. Owasso Indep. Sch. Dist., 229 F.3d 956, 963 (10th Cir. 2000).  "A party's expectation in the privacy of specific information is sufficiently legitimate to warrant constitutional protection only if that information 'is highly personal or intimate.'"  Id. at 964 (quoting Nilson v. Layton City, 45 F.3d 369, 372 (10th Cir. 1995)) (emphasis added).

Mr. Collopy's claim is legally insufficient for want of a reasonable expectation of privacy in the police blotters. Police blotters are available for public inspection. N.M. Stat. Ann. § 29-10-7(A)(2) provides that:

> Information contained in the following documents shall be available for public inspection:
> . . .
> (2) original records of entry such as police blotters maintained by criminal justice agencies, compiled chronologically and required by law or long-standing custom to be made public, if the records are organized on a chronological basis.

Mr. Collopy can have no reasonable expectation of privacy in information available for public inspection. Cf. Scheetz v. The Morning Call, Inc., 946 F.2d 202, 207 (3d Cir. 1991) (holding that there is no reasonable expectation of privacy in police reports because information could end up in public record if charges are brought); Walls v. City of Petersburg, 895 F.2d 188, 193-94 (4th Cir. 1990) (holding that there is no reasonable expectation of privacy in information relating to marriages, divorces, and children available in public records).

In response, Mr. Collopy argues that records are no longer public where particular records are gathered and disclosed in other than chronological order and that the reason for an individual's inspection of the records somehow alters the public nature of the records. See Plaint. Resp. at 8 (doc. 18). Because Chief Knott compiled police blotters for the purpose of attacking Mr. Collopy's credibility, the argument goes, Chief Knott's

conduct somehow rendered the blotters less public in nature.[3]  Section 29-10-7(A)(2) makes no such distinctions.  Insofar as the argument that the records lose their public status if not gathered and disclosed on a chronological basis, Mr. Collopy failed to plead any facts suggesting that the police blotters were not public record in his complaint.  Mr. Collopy cannot amend his complaint in his opposition to the motion to dismiss.  Car Carriers, Inc., 745 F.2d at 1107.

Mr. Collopy also argues that he had a reasonable expectation of privacy in the police blotters because Chief Knott violated § 29-10-2, which prohibits the inaccurate and irresponsible dissemination of police records.  Section 29-10-2 requires accurate and complete dissemination of information between law enforcement agencies.  There are no allegations that the police blotters were inaccurate or incomplete.  Moreover, even if Chief Knott's dissemination of the police blotters was irresponsible, the blotters were no less public.

Because Mr. Collopy did not have a reasonable expectation of privacy in the police blotters, the court need not address whether Chief Knott's actions constituted public disclosure and whether Mr. Collopy can assert a right of privacy in information regarding his children.

---

[3] Mr. Collopy argues:  "Knott's dissemination of particular records to the DA's Office, coupled with his use of and misrepresentation of the records to place Plaintiff in a false light in order to attack Plaintiff's personal and professional integrity are not even remotely comparable to a member of the public inspecting chronologically ordered records, as contemplated by the Arrest Record Information Act."  Plaint. Resp. at 8 (doc. 18).

D.  §  1981

Mr. Collopy argues that he has standing to assert a § 1981 claim because Chief Knott attacked his impartiality in connection with his actions in Mr. Hodge's criminal hearing.  Specifically, Mr. Collopy asserts that Chief Knott attacked his impartiality because (1) Mr. Collopy's ruling favored the son of a prominent African-American community activist who openly opposed alleged racial discrimination by the police department, Compl. at ¶ 42 (doc. 1), (2) the police department was under investigation for the arrest of Mr. Hodge, id., and (3) Chief Knott believed Mr. Collopy was "coming to the aid or assistance of a Black citizen acted in an attempt to forestall further acts helpful to the Black community." Id. at ¶ 43.  Mr. Collopy interprets Chief Knott's actions as exhibiting a belief that Mr. Collopy "sided with, or associated with Hodge." Plaint. Resp. at 10 (doc. 18).

Section 1981 protects four interests: "(1) the right to make and enforce contracts; (2) the right to sue, be parties, and give evidence; (3) the right to the full and equal benefits of the laws; and (4) the right to be subjected to like pains and punishments." Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1267 (10th Cir. 1989).  "The term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Mr. Collopy's complaint, which revolves around his resignation, can only be read to assert an infringement of his right to make and enforce contracts.  Read as such, the

complaint fails to state a claim under § 1981.  The interest in the right to make and enforce contracts is premised upon a "contract" or "contractual relationship."  Id.  In this case, there was no contractual relationship between Mr. Collopy and the police department.  Mr. Collopy, as special master, was employed by the court, not the police department

      Mr. Collopy's complaint fails for a second reason.  It is true that "alleged discrimination against a white person because of his association with black persons states a cause of action under § 1981 . . . ."  Patrick v. Miller, 953 F.2d 1240, 1250 (10th Cir. 1992) (emphasis added).   In the instant case, however, Mr. Collopy did not associate with Mr. Hodge.  Mr. Collopy was not Mr. Hodge's advocate in the hearing.  He was the special master.  Moreover, Mr. Collopy cannot be said to have associated with Mr. Hodge by stating that his civil rights might have been violated.  In the myriad cases cited by the Tenth Circuit in Patrick, the plaintiffs associated with African-Americans.  E.g. DeMatteis v. Eastman Kodak Co., 511 F.2d 306, 312 (2d Cir. 1975) (plaintiff sells house to African-American co-worker); Liotta v. Nat'l Forge Co., 629 F.2d 903, 906-07 (3d Cir. 1980) (plaintiff endeavors to eliminate discrimination against African-American co-workers); Fiedler v. Marumsco Christian Sch., 631 F.2d 1144, 1149-50 (4th Cir. 1980) (plaintiff maintains friendship with fellow African-American student); Alizadeh v. Safeway Stores, Inc., 802 F.2d 111, 114 (5th Cir. 1986) (plaintiff married to Iranian); Winston v. Lear-Siegler, Inc., 558 F.2d 1266, 1270 (6th Cir. 1977) (plaintiff protests firing of African-American co-worker).

The court agrees with Defendants that "[i]t is inconceivable that the judicial decision of the Plaintiff could be argued to be an action to further the cause of the Black community or even be an act intended to further the civil rights of Michael Hodge.  That would be clearly an improper basis upon which to rule."  Defendants Reply in Support of Motion to Dismiss at 3-4, filed September 21, 2000 (doc. 19).  Indeed, the premise of this action was that Mr. Collopy was impartial and did not associate with Mr. Hodge.  Accordingly, even taking Mr. Collopy's factual allegations as true, his § 1981 claim is legally deficient.  See Sutton, 527 U.S. at 475.  Because the claim will be dismissed on this ground, it is unnecessary to evaluate the underlying reasons for Chief Knott's actions and whether such actions were racially motivated or discriminatory.

E.   City of Hobbs

Insofar as the City of Hobbs is concerned, the complaint alleges that Chief Knott was a final policy maker and that the City is responsible for his actions a its final policymaker.  Complaint ¶¶ 6, 46; see generally Randle v. City of Aurora, 69 F.3d 441, 446-50 (10th Cir. 1995) (discussing municipal liability under §§ 1981 and 1983).  But given the lack of an adequately alleged constitutional or federal claim against Chief Knott, there is no claim for municipal liability against the City.  See Wilson v. Meeks, 98 F.3d 1247, 1255 (10th Cir.1996).

NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED that Defendants City of Hobbs and Tony Knott's Motion to Dismiss All Claims in Plaintiff's

Complaint filed September 21, 2000 (doc. 16), is granted, and the action will be dismissed with prejudice.

DATED this 13th day of December 2000, at Santa Fe, New Mexico.

/s/ Paul Kelly Jr.
Paul J. Kelly, Jr.
United States Circuit Judge
Sitting By Designation

Counsel:
Gregory L. Biehler, Beall & Biehler, P.A., Albuquerque, New Mexico, for Defendants.

Phillip B. Davis, Jane Gagne and Linda Vanzi, Albuquerque, New Mexico, for Plaintiff.