# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MICHAEL J. COLLOPY,

       Plaintiff,

v.                                                Civil No. 00-807 WJ/LFG-ACE

CITY OF HOBBS, a New Mexico
Municipal Corporation, and
TONY KNOTT, in his individual
and official capacities,

       Defendants.

## MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court upon a Motion for Summary Judgment filed by Defendants City of Hobbs and Tony Knott on June 7, 2002 **(Doc. 46)**, following a Tenth Circuit order of reversal and remand.  The complaint alleges that Defendants retaliated against Plaintiff Michael J. Collopy for a statement he made while acting as a Children's Court Special Master and in the exercise of his First Amendment right to speak about possible civil rights violations by the Hobbs police department. Plaintiff claims that Tony Knott, the Chief of Police for the City of Hobbs, encouraged prosecutors to appeal one of Plaintiff's rulings and that Knott provided them with allegedly misleading police records reflecting unfavorably on Collopy and his children in order to support the appeal and to assist in the prosecutors' defense of themselves during ensuing disciplinary proceedings.  Allegedly intimidated, Collopy resigned his position as special master, to his detriment.  Having considered all the pleadings, memoranda and other materials submitted by the parties, as well as the applicable law, I find that Defendants' motion is not well-taken and

will be denied.

## Background

Collopy is an attorney who served as a part-time special master to the Lea County Children's Court in juvenile cases for 16 years.[1] In June, 1997, he presided over an evidentiary hearing regarding the merits of criminal charges filed against Michael Hodge, an African-American teenager charged with resisting arrest and eluding or obstructing an officer following a violent incident at a high school football game. Hodge's mother and uncle were known to be outspoken community activists in Hobbs protesting the conduct of the Hobbs Police Department. Controversial police conduct during the incident attracted charges of civil rights violations, including an investigation by the Department of Justice. Prior to the Children's Court adjudicatory hearing, Michael Hodge filed a tort claims notice alleging civil rights violations.

Collopy recommended dismissal of the charges against Hodge and also commented that Hodge's civil rights "may well have been violated . . . [but] that is not for this court to determine." *Compl. ¶ 16*. After learning of Collopy's comment, Knott became concerned, angry and upset, and complained to the Office of the District Attorney ("DA") that the police officers involved in the Hodge case "did not get a fair shake" at the hearing. *Compl. ¶ 19*. Knott "urged, encouraged and instigated" the DA's office to find a way "to obtain a new hearing or other judicial relief that would set aside the plaintiff's findings in the Hodge case. . . " *Compl. ¶ 20*.

The assistant district attorney who prosecuted Hodge's case initially did not intend to

---

[1] The recitation of facts follows the allegations in the complaint, which were also set forth in the appeal order.

appeal Collopy's ruling.[2] After Chief Knott's complaint, however, assistant district attorney William Quickel filed an "exception" to the ruling together with "police blotter" records relating to one of Collopy's juvenile children provided to the prosecutors by Knott "for use in supporting" the exception. *Compl. ¶¶ 21, 22, 27, 28.* Plaintiff views the action as an attack on his impartiality and "an attempt to discredit him by misquoting, or taking out of context, his remarks about a possible civil rights violation." *Compl. ¶ 23.*

The state court that reviewed the "exception" overruled it and affirmed Collopy's decision, then referred the matter to the New Mexico Supreme Court's disciplinary board for disciplinary proceedings against individuals in the DA's office for their conduct based on the "exception" that had been filed in the Hodge case. Knott then furnished prosecutors additional police blotter records relating to Collopy and his children after learning that Collopy was going to testify against the prosecutors at a disciplinary proceeding. The Disciplinary Board concluded that the exception filed at Knott's request had "no sound basis in law" and was frivolous. William Quickel, the prosecutor who filed the exception, and Tom Rutledge, the district attorney, were formally reprimanded. *Collopy v. City of Hobbs, et al.*, No. 01-2000, 2001 WL 1647314 (10th Cir. N.M.)(citing *In Re Rutledge & Quickel*, Disciplinary Nos. 09-97-333 & 09-97-334, 38 N.M. SBB., No. 10 at 1, 3-4 (N.M. S.Ct. Disciplinary Bd. Mar. 11, 1999)).

The "vast majority" of these records identify Collopy and his children as victims or witnesses of crimes. *Compl. ¶ 34.* Nevertheless, Collopy alleges that Knott proceeded as though

---

[2] Recommendations of a special master are "contingent upon the approval of the children's court judge." N.M.S.A. § 10-111(C). Prior to such approval, a party may file exceptions to a special master's "proposed findings, conclusion, recommendations or proposed order." *Id.,* § 10-111(E).

the information regarding his children was negative in order to support a charge that Collopy had a "suspected bias" against the Hobbs Police Department" which led to Collopy's decision to acquit Hodge and to his "statement regarding a possible violation of Hodge's civil rights." *Compl. ¶ 35.*

Plaintiff alleges that Knott had a retaliatory motive in furnishing the police blotter records, and that Knott's actions were carried out with the intent of creating a "chilling effect" on Collopy's willingness to continue serving as a special master. *Compl., ¶¶ 36, 38.* He alleges that his resignation of that position resulted in a loss of income in addition to emotional distress, humiliation and embarrassment. *Compl. ¶¶ 45, 47.*

## Discussion

### *Legal Standard - First Amendment*

In a First Amendment claim outside a public employment context, a plaintiff must show (1) that he "was engaged in constitutionally protected activity"; (2) that the defendant's actions caused the plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) that the "defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir.2000), *cert. denied*, 533 U.S. 916 (2001).

### *Procedural History*

The United States District Court for the District of New Mexico dismissed Collopy's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), ruling that the prosecutors, as opposed to Knott, filed the offending police blotter records and that Knott's action could not

4

have chilled Collopy from continuing to serve as special master, even if Knott's action could be considered a proximate cause of the filing of those documents. *See Collopy v. City of Hobbs, et al.*, Civil No. 00-807 PK/LFJ (Dec. 13, 2000). The district court found that Knott was entitled to communicate his views to the DA's office about Collopy's report by providing the DA's office with the police blotters. The court further found that because the information in the police blotters constitutes public information, Knott's action in providing this information to a prosecutor would not "chill a person of ordinary firmness" from continuing as a special master.

On appeal, the Tenth Circuit reversed and concluded that the complaint adequately stated a claim on which relief could be granted. The Court stated that Plaintiff could persuade a reasonable trier of fact that Knott's erroneous portrayal of Collopy's children as criminals through the information in the police blotters was not "one of the many hazards that a judicial officer should be expected to face." *Collopy v. City of Hobbs, et al.*, No. 01-2000, 2001 WL 1647314, *9 (10th Cir. N.M.). The remand order further found that a trier of fact could find that an attack on a reasonable person and his children, "such as that which Knott allegedly facilitated, would 'chill' that person to the point of resignation." *Id*. The Appeals Court held that Plaintiff's complaint satisfied the third element of a retaliation claim in that there was circumstantial evidence that "Knott's encouragement of the filing of the exception and his disclosure of police blotter records were intended, at least in part," to retaliate against Collopy for his statement about possible civil rights violations by the Hobbs police. *Id.*, at 10.[3] The Court further found that the complaint sufficiently alleged that Knott's action was the "primary force" behind the prosecutors' decision to file the exception as well as to use the police blotters in their own defense during the

---

[3] The district court had not addressed this third element.

5

disciplinary proceedings. *Id.,* at 15. Such actions could cause a special master "of ordinary firmness to cease his protected activity and resign his position." *Id.*, at 15-16.

### *Legal Standard - Qualified Immunity Based on Summary Judgment*

Having survived a motion to dismiss, the question now is whether Plaintiff can survive Defendants' instant motion for summary judgment, in which Defendants contend both that Plaintiff cannot establish a substantive violation and also that they are qualifiedly immune from Plaintiff's claim of retaliation."[4]

After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, who must meet a two-part test before the defendant will bear the traditional burden of movant for summary judgment under Fed.R.Civ.P. 56(c). *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001) (quoted case omitted). First, the plaintiff must demonstrate that "defendant's actions violated a constitutional or statutory right." Second, the plaintiff must show that "the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Davis v. Scherer*, 468 U.S.183, 197 (1984). Thus, the first determination that the Court must make is "whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (quoted in Albright, 51 F.3d at 1534). If the plaintiff fails to meet either prong of the two-part test, the defendant is entitled to qualified immunity. *Id*. If the plaintiff meets this burden, only then does the burden shift to the defendant. *Id*. The defendant then must show "that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Id*. (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 779 (10th Cir.1993)).

---

[4] Plaintiff's other claims were not raised on appeal, nor are they before this Court.

*First Element - Whether Speech is Protected*

In this case, the Tenth Circuit determined on appeal that commenting in one's capacity as a special master on the possibility of civil rights violations "is speech on a subject of public importance that is protected by the First Amendment." *Collopy v. City of Hobbs, et al.*, No. 01-2000, 2001 WL 1647314, at *7 (10th Cir. N.M.). Under the "law of the case" doctrine, the issue should not be open for additional discussion. *United States v. Alvarez*, 142 F.3d 1243, 1247 (10th Cir.1998) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)) (when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case). Further, Defendants' characterization of Collopy's comments as negatively affecting the outcome or fairness of the adjudicatory hearing in Hodge's case is a weak stab at what is clearly constitutionally protected speech. *Connick v. Myers*, 461 U.S. 138, 145-49 (1983) (Speech on a matter of public concern is speech which can "be fairly considered as relating to any matter of political, social, or other concern to the community").

Collopy also presents evidence that his comments were neither arbitrary nor gratuitous, but rather were made in the context of a response to Hodge's defense counsel's comments regarding violations of her client's civil rights. *Rankin v. McPherson*, 483 U.S. 378, 384-855 (1987) (internal quotation marks omitted) (whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record). Thus, based on the law of the case previously decided by the Court of Appeals, as well as on the evidence in the record, Collopy was engaged in constitutionally protected activity, satisfying the first element of a First Amendment retaliation claim.

*Second Element - Chilling Effect*

7

The Court of Appeals reversed the district court's conclusion on this issue, and held that the complaint sufficiently alleged facts that could persuade a reasonable trier of fact that a reputational attack, such as that launched by Knott, on Collopy and his family, would "chill" a person in his position to the point of resignation. *Collopy*, No. 01-2000, 2001 WL 1647314, at *9 (10th Cir. N.M.). Plaintiff now presents evidence in response to Defendants' motion for summary judgment which describes in a bit more detail the nature of the information contained in the police blotters. Knott gratuitously provided prosecutors who filed the exception to Collopy's report with police records regarding one of Collopy's sons, Zane. These records, which were labeled as "32 criminal reports," actually showed that Zane was an "offender" three times, a suspect six times; a witness six times; a victim sixteen times; and an informant once. *Ex. 7; Ex. 1 at 181:25-183:23* (Knott's testimony at disciplinary board hearing).[5]

Knott supplied the same records to assist in the prosecutors' defense of themselves during the disciplinary board hearing, including additional records regarding Plaintiff's two other sons, Bryan and Cade. These records, which contained information on juvenile charges against the sons, were designated as confidential documents under the Arrest Records Information Act. *Ex. 11 (B2) & 11 (D2)*. This type of evidence could certainly support an inference that having such information released and made public would "chill a person of ordinary firmness" from continuing to engage in a particular activity. In other words, a trier of fact could reasonably find that supporting an official challenge to Collopy's impartiality with such information would be enough to persuade him to resign from his part-time position as a adjudicatory decisionmaker.

***Substantially Motivated***

---

[5] Plaintiff's exhibits are numbered; Defendant's exhibits are lettered.

8

A plaintiff alleging retaliation must show that the defendant's adverse action was "substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Worrell*, 219 F.3d at 1212. Allegations of retaliation are often supported only by circumstantial evidence. *Smith v. Maschner*, 899 F.2d 940, 949 (10th Cir.1990). The Tenth Circuit found that the allegation that Knott portrayed Collopy's children as criminals in order to persuade the prosecutors to appeal the Hodge ruling could be perceived, if proven, as circumstantial evidence of retaliatory motive. Evidence relating to these allegations in the form of depositions and other exhibits creates factual disputes which, when viewed in a light most favorable to Plaintiff, defeat summary judgment.

Collopy's status as a criminal defense attorney was well known by Defendants at the time Collopy filed his report. However, the exception does not mention it. Instead, the exception focuses on the juvenile criminal conduct of "a member of the Special master's family." *Ex. F*. Parties also disagree over whether Knott raised the issue of Collopy's status as a criminal defense attorney to a newspaper reporter, or vice versa. Plaintiff offers evidence in the form of Knott's own statements that he brought it to the reporter's attention. *Ex. 1 at 175:6-15*.

As discussed above, Plaintiff offers evidence that Collopy's comment at the hearing was a response to Hodge's defense counsel's comments regarding violations of her client's civil rights. Plaintiff contends that even though Knott knew the context surrounding Collopy's comment by the time of the disciplinary hearing, Knott nevertheless characterized it as a gratuitous statment by Collopy at the hearing. *Ex. 1 at 156:23-24; Ex. 1 at 160:20-22; and Ex. 1 at 179:1-6.* Knott describes his role in providing the police records as a kind of passive compliance with requests by Rutledge and Quickel from the DA's office, *Statement of Undisp. Facts 17-29,* but Plaintiff points

9

to evidence that is inconsistent with this typecasting. *Ex. 1 at 196-97* (Knott's statement at the disciplinary hearing that ". . . I was definitely the push behind this thing"). A dispute of material fact also exists as to whether the DA's office conducted an independent investigation of Knott's concerns about a possible professional conflict regarding Collopy's report, or whether the DA's office simply proceeded to rubber-stamp Knott's characterization of the police blotter information as "negative contacts" between the Hobbs police department and the Collopy family. *Ex. B at 23-24; Ex. 2 at 69:107; Ex. 1 at 184:4-11.*

The above circumstantial evidence suggests that Knott's interest in forwarding criminal records of Collopy's sons to the DA's office – and then additional evidence regarding two other sons later on for use at the disciplinary board hearing -- was not purely concern about the propriety of a legal ruling. Given that Knott feared that Collopy's comment about Hodge's civil rights would incite certain members of the community, and his anger on learning about the comment, Knott's actions could be perceived as retaliatory. Were it not for what appears to be Knott's instrumental role in urging prosecutors to file the exception, the exception would not have been filed, and it follows that the disparagement of the Collopy children would not have occurred. Thus, Plaintiff has presented evidence sufficient to infer a finding that Knott's disclosure of the police blotter records was intended, at least in part, to retaliate against Collopy for his statements about possible civil rights violations by the Hobbs police, which is a constitutionally protected activity.

*Qualified Immunity*

As previously discussed, Plaintiff has demonstrated sufficient evidence to create material disputes of fact on the required elements of a First Amendment claim. Nevertheless, Defendants can be granted qualified immunity if they can show that the law which they are alleged to have violated was not clearly established at the time the conduct occurred.[6]

Under Defendants' version of the inquiry, this Court should look at "whether it is clearly established that a police officer cannot comply with his statutory duty to assist a district attorney and provide information to that district attorney pursuant to an inquiry into whether the special master was biased in a criminal proceeding against that officer's police department." *Mem. In Supp. of Mot. for Sum.J. at 16*. However, Defendants' focus is misplaced in that it looks through the wrong set of eyes. The "clearly established" inquiry is conducted from the point of view of *plaintiff's* allegations of wrongful conduct. *Mitchell v. Forsyth*, 472 U.S. 511, 528 n.9 (1985); *Davis v. Scherer*, 468 U.S. 183, 191 (1984) (whether the facts alleged by the *plaintiff* support a violation of clearly established law of which a reasonable person would have known (emphasis supplied).

Plaintiff alleges that Defendants retaliated against him for a comment made in the course of making a judicial decision by mischaracterizing evidence to a prosecutor in order to improperly influence a prosecutorial decision. As discussed in the above findings, the evidence supports Plaintiff's view of the facts. Therefore, the second prong of the qualified immunity defense

---

[6] Qualified immunity "shields *government officials* performing discretionary functions from *individual liability* under 42 U.S.C. § 1983. *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir.1998) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is not available to the City of Hobbs as a defense. *See Owen v. City of Independence*, 445 U.S. 622, 638 (1980) (qualified immunity defense not available as a defense to municipal liability).

centers on whether the law was clearly established in 1997 such that Defendants should have known that the alleged conduct was unlawful.

For a law to be "clearly established," the contours of the right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir.1995) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). This is ordinarily indicated by a Supreme Court or Tenth Circuit decision on point, or by the clearly established weight of authority from other courts. *Id*. Tenth Circuit law existed prior to 1997 which established that a police officer may not mislead prosecutors in order to retaliate against an individual. *DeLoach v. Bevers*, 922 F.2d 618 (10th Cir. 1990) (where police officer furnished deliberately misleading affidavit in retaliation for plaintiff's exercise of right to retain counsel after being identified as suspect in case). Because a "precise factual correlation between the then-existing law and the case at-hand is not required," *Patrick v. Miller*, 953 F.2d 1240, 1249 (10th Cir. 1992), I find that the factual and legal scenario in *DeLoach* sufficiently put Defendants on notice that their conduct could violate Plaintiff's First Amendment rights. *Id*. (The law is clearly established "when it is well developed enough to inform the reasonable official that his conduct violates that law"). Accordingly, Defendant Knott is not entitled to qualified immunity.

**THEREFORE**,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment **(Doc. 46)** is hereby DENIED.

_____
UNITED STATES DISTRICT JUDGE